## The Bank of Monroe *vs.*
## A. M. Schermerhorn and others.

An injunction was allowed upon a creditor's bill as against the judgment debtor and his assignee for the benefit of creditors. Upon a motion to disolve the injunction, as to the assignee, it appeared that the first preference provided for in the assignment, was for a contingent liability of a doubtful character, and as to which it would take a long time to ascertain the amount; and inasmuch as a receiver had been appointed, who had given bonds, the motion to dissolve the injunction was denied.

An injunction is not dissolved of course even upon a full denial of the equity of the bill, if the court can see in the facts disclosed, good reasons for retaining it.

*George H. Mumford,* for complainants.

*William S. Bishop,* for defendants.

The Vice Chancellor. This was a creditor's bill originally filed against A. M. Schermerhorn. Subsequently an amended bill was filed against Bishop and others ; and on filing such bill, an injunction was granted as against Bishop. Subsequently a receiver was appointed in this cause, in the ordinary course of appointment of receivers on credi-

Sept. 1840.

The Bank of Monroe

v.

A. M. Schermerhorn and others.

tor's bills, and the receiver has entered upon the discharge of his duties.

W. S. Bishop now moves for the dissolution of the injunction as against him. The facts brought into view upon this motion, are as follows.

The complainants in this suit had recovered a judgment against the defendant Schermerhorn, in May, 1839, and issued an execution returnable in May term, 1839, upon the return of which unsatisfied, this bill is filed. The bill alleges that A. M. Schermerhorn had, previous to the recovery of this judgment, and in fraud of the rights of his creditors, conveyed to his son, James A. Schermerhorn, the property known as the Monroe House, in Rochester, as a gift and without consideration—that the son was induced by the father to mortgage this property, as collateral security, to a company in New-York, for a loan the father was about to make—that to indemnify the son, the father confessed a judgment to him of $80,000—that on the 4th December, 1839, the father executed an assignment to the son and William S. Bishop of all his property, in trust for the payment of his debts, and the first preferred creditor was the son, James A. Schermerhorn, for this contingent debt. It appears further, that the direct mortgage of the father to the New-York company, was to secure $180,000, for which property valued at $326,000 was mortgaged—that the mortgage of the son with other mortgages was executed collateral to this mortgage to secure the same debt—that the judgment was an indemnity against any loss the son might sustain by reason of executing such mortgage. It appears also, that Bishop did not actually receive the assignment, and consent

to act under it, until after the bill was filed in this cause; and that he only then consented to act on condition that the son, James A. Schermerhorn, should renounce, which he did do by writing endorsed thereon.

A question is made under this state of facts, whether the assignment was actually complete by the delivery to Bishop, before the filing of the bill in this cause. Though I doubt about the sufficiency of the delivery under the circumstances of this case, yet I do not think it necessary to place the decision of this motion upon that ground. It must be conceded that Bishop is acting for the creditors under the assignment. The assigned property is however now in the hands of an officer of this court, a receiver appointed by an order of this court, and can only be disbursed or paid out under an order of this court.

It is to be presumed that disbursements or payments will not be ordered, except upon clear rights. It is also to be assumed that a receiver appointed by this court, is full as competent to collect, secure and protect the property of the assignor, as the assignee appointed under his direction. The receiver has given bonds for the faithful discharge of his duty. The assignee has not. The receiver is fully under the control of the court as to the payments, and if the preferences in the assignment are to be regarded as valid, an order can be made recognizing the validity of such assignment, and directing payment to be made accordingly. In such cases, it is not of course to dissolve an injunction, even upon a full denial of the equity of the bill, if the court can see sufficient reason for retaining the property in the hands of the receiver. To so retain it, will in this case work no

Sept. 1840

The Bank of
Monroe
v.
A. M. Scher-
merhorn and
others.

injury, while to dissolve it, may do so. I wish to hear something more about this assignment in the way of proof. I wish to hear something more about the validity of the conveyance of this property from the father to the son, without any money consideration. The first preference by the assignment, is in favor of the son.

This is merely for a contingent liability, to indemnify him for any loss he may sustain by reason of the execution of his collateral mortgage. Before the son can avail himself of this provision, proceedings must be had to foreclose the original mortgages. If they prove insufficient, the son can resort to his judgment. If all prove insufficient, he has his resort to the assignment. Much time must be consumed before it can be ascertained how much the son is entitled to, receive under the assignment, probably many years. In the mean time what are the assignees to do? Are they to keep the avails of the assigned property to see what the ultimate damage of the son may be? This would prevent any distribution under the assignment for a long time, and looks like locking up the assigned property from being reached by the creditors of the assignor, in a reasonable time.

Under the circumstances of this case, I must permit it to remain as it is. I must refuse the motion to dissolve the injunction and leave the matter to be probed by proofs.

Motion to dissolve injunction denied, costs to abide event.